UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Salma A. Mohammed,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES; UR JADDOU, in her official capacity as Director of USCIS and CONNIE NOLAN, in her official capacity as Acting Associate Director, USCIS Service Center Operations Directorate;<br><br>MERRICK GARLAND, in his official capacity as Acting Attorney General of the United States;<br><br>ALEJANDRO MAYORKAS, in his official capacity as Acting Secretary of the Department of Homeland Security<br><br>Defendants. | Civil No.: |

**PETITION FOR WRIT OF MANDAMUS AND COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Salma A. Mohammed is a citizen of Yemen whose Temporary Protected Status ("TPS") extension application and corresponding Employment Authorization Document ("EAD") extension application are long-pending. Plaintiff has not resided in Yemen for over nine years, as the Department of Homeland Security has indicated that returning to Yemen

1

presents a serious risk to Yemeni nationals' personal safety due to the ongoing armed conflict. Although she timely filed both renewal applications within the re-registration window, ***more than 190 days ago***, Defendant USCIS has unreasonably failed to adjudicate those applications in advance of the upcoming expiration date of her previous TPS-based EAD.

Previously, when Plaintiff applied for TPS and EAD in April 2020, USCIS failed to adjudicate her application for more than 255 days, despite repeated requests for expedition through all available avenues. She was without work authorization for more than 135 days, which caused severe financial strain and jeopardized her employment at the American technology company iRobot. Plaintiff was not granted a decision regarding her TPS and EAD applications until she was forced to file a lawsuit against USCIS on December 29, 2020, at which point she was on the brink of unemployment and would have been forced to return to Yemen, a country in the midst of armed conflict where over 230,000 people have died since 2015.

Plaintiff is again awaiting adjudication of her TPS and EAD applications, filed in July 2021. Defendant USCIS's unreasonable delays will have severe consequences for Plaintiff if her renewal is not approved before the expiration of her current EAD because: (1) without a valid EAD, she will lose her only source of income; (2) without authorization to work, she will rapidly deplete her savings, given that she has no family in the U.S. and no other means of financial support; (3) she faces the risk of losing her job at iRobot; and (4) she jeopardizes her employment-based green card application, currently underway, for which iRobot is sponsoring her. With her financial security, employment, and sponsorship for permanent residency at risk, Plaintiff has filed this lawsuit to remedy Defendants' unreasonable failure to adjudicate her applications.

## JURISDICTION

1) This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), the Administrative Procedures Act, 5 U.S.C. § 702, and the Mandamus Act, 28 U.S.C. § 1361.

## VENUE

2) Venue in this district is proper under 28 U.S.C. § 1391(e)(1) because Plaintiff resides in this district.

## PARTIES

3) Plaintiff, Salma A. Mohammed, is a citizen of Yemen and resident of Cambridge, Massachusetts, whose timely filed TPS renewal application is pending.

4) Defendant United States Citizenship and Immigration Services ("USCIS") is the agency within the Department of Homeland Security ("DHS") which is responsible for adjudicating TPS extensions and issuing Employment Authorization Documents ("EAD").

5) Defendant Ur Jaddou is sued in her official capacity as Director of USCIS and Connie Nolan is sued in her official capacity as Acting Associate Director, USCIS Service Center Operations Directorate, USCIS. Ms. Nolan's Service Center Operations Directorate provides services for persons seeking immigration benefits and provides decisions to individuals requesting immigration benefits at the Vermont Service Center, where Plaintiff's applications remain pending.

6) Defendant Merrick Garland, named in his official capacity, is the current Acting Attorney General of the United States.

7) Defendant Alejandro Mayorkas, named in his official capacity, is the current United States Acting Secretary of the United States Department of Homeland Security.

## STATUTORY AND REGULATORY BACKGROUND

8) The Immigration and Nationality Act ("INA") provides that nationals of countries that are designated by the Attorney General as having extraordinary conditions that make the country too unsafe to return to, may apply for TPS. 8 U.S.C. § 1254a(a)(1).

9) Once TPS is granted, the INA provides that the Attorney General "shall not remove the alien from the United States during the period in which such status is in effect." 8 U.S.C. § 1254a(a)(1)(A). Thus, TPS creates a safe-haven for qualifying foreign nationals, while there are extraordinary conditions in their home country that prevent them from safely returning.

10) The INA further provides that, "[the Attorney General] … **shall** authorize the alien to engage in employment in the United States and provide the alien with an "employment authorized" endorsement or other appropriate work permit." 8 U.S.C. § 1254a(a)(1)(B) (emphasis added).

11) Accordingly, the INA's implementing regulations require that, "[u]pon approval of an application for Temporary Protected Status, [U.S. Citizenship & Immigration Services] **shall** grant an employment authorization document [EAD] valid during the initial period of the foreign state's designation (and any extensions of such period)." 8 C.F.R. § 244.12(a) (emphasis added) (hereinafter "TPS EAD Rule").

12) The regulations also provide that "aliens granted Temporary Protected Status must re-register periodically in accordance with USCIS instructions. Such registration applies to nationals of those foreign states designated for more than one year by DHS or where a designation has been extended for a year or more. *Applicants for re-registration must apply during the period provided by USCIS*." 8 C.F.R. § 244.17(a) (emphasis added).

13) On September 3, 2015, the Secretary of Homeland Security announced that Yemen would be designated for TPS, "upon finding that there is an ongoing armed conflict within the foreign state and, due to such conflict, requiring the return of nationals of the state would pose a serious threat to their personal safety." 80 FR 53319-23 (Sept. 3, 2015).

14) The DHS has since continued to re-designate TPS for Yemen. Most recently, on July 9, 2021, the Secretary of Homeland Security re-designated TPS for Yemen until March 3, 2023. This allowed qualifying Yemenis with TPS to apply for an extension of their status until March 3, 2023. 86 FR 36295 (July 9, 2021).

15) Through the publication of its most recent notice in the Federal Register, DHS also granted an *automatic* extension of the validity of EADs issued under the preceding 18- month TPS designation of Yemen, which were set to expire on September 3, 2021, for 180 days through March 2, 2022. *Id.* 36296

# FACTS

16) Plaintiff is a citizen of Yemen and resident of Cambridge, Massachusetts.  (Mohammed Aff., Exhibit A1, ¶ 1).

17) Plaintiff has held TPS status since June 14, 2016, having most recently been granted TPS status on January 12, 2021. (*Id.*, ¶¶ 11, 26).

18) Plaintiff has been residing in the United States for more than nine years, since August 25, 2012, initially as a college student pursuant to an F-1 student visa, and most recently in TPS status for over four years. (*Id.*, ¶ 2, 11).

19) Plaintiff has not left the United States since she was last admitted to the country on May 27, 2015. (*Id.*, ¶ 6).

5

20) Three times before, Plaintiff has applied for—and Defendant USCIS has approved—EAD cards authorizing Plaintiff to lawfully work in the United States, as required under the TPS EAD Rule. (*Id.*, ¶¶ 13-17, 20-26).

21) The third time, when Plaintiff applied for TPS-based EAD on April 17, 2020, Defendant USCIS failed to adjudicate her application for more than 255 days, despite Plaintiff's timely and proper filing and despite repeated requests for expedition. (*Id.*, ¶¶ 20-26).

22) On April 24, 2020, Plaintiff relied on Defendant USCIS's previous extensions of her TPS and TPS EAD Rule when she applied for a position at iRobot, securing a Data Analyst position. (*Id.*, ¶ 21).

23) Defendant USCIS failed to adjudicate Plaintiff's TPS and EAD extension application until 135 days after her EAD expired, requiring her to go on unpaid leave at iRobot and jeopardizing her employment there. (*Id.*, ¶¶ 23, 25).

24) During these extraordinary delays, Plaintiff made more than eight (8) attempts to contact Defendant USCIS, with no meaningful response. Plaintiff filed a federal lawsuit against Defendant USCIS on December 29, 2020, and as a result her TPS and EAD extension applications were approved on January 12, 2021. (*Id.*, ¶¶ 24, 26).

25) Plaintiff's most recently granted EAD was valid from January 12, 2021, until the TPS designation period for Yemen was set to expire on September 3, 2021. (*Id.*, ¶ 27, Mohammed Aff., Exhibit A1; Exhibit P TPS Approval).

26) On July 9, 2021, the Department of Homeland Security announced an 18-month re-designation of TPS for Yemen, as well as a 180-day extension of all previously-granted TPS-based EADs. As such, Defendant USCIS required Plaintiff to file the extension of her

designation within a two-month window: July 9, 2021 – September 7, 2021. (Mohammed Aff. ¶ 28).

27) On July 28, 2021, Plaintiff timely and properly filed a Form I-821 to request a renewal of her TPS through March 3, 2023. Concurrently with that application, Plaintiff filed a Form I-765 to extend her EAD for a period to match her TPS extension. (*Id.*, ¶ 30).

28) As noted above, because her EAD was automatically extended for 180 days, Plaintiff was authorized to continue working beyond September 3, 2021 until March 2, 2022. (*Id.*, ¶ 29).

29) On July 29, 2021, Defendant USCIS issued a Notice of Action (Form I-797C), bearing Plaintiff's case number A207991875, stating "that USCIS is able to reuse your previously captured fingerprints and other biometrics." The Notice confirmed that it was not necessary for Plaintiff to appear at a USCIS Application Support Center for a biometrics appointment. (*Id.*, ¶ 30, Mohammed Aff., Exhibit A1; Exhibit R, TPS and EAD receipt).

30) On July 30, 2021, Defendant USCIS issued a Receipt Notice (Form I-797C) bearing the case number A207991875, confirming that Plaintiff filed her Form I-821 to renew her TPS. That same day, Defendant USCIS issued another Receipt Notice (Form I-797C) bearing the case number A207991875, confirming that Plaintiff filed her Form 1-765 to extend her EAD. (*Id.*, ¶ 30, Mohammed Aff., Exhibit A1; Exhibit R, TPS and EAD receipts).

31) On January 3, 2022, 159 days after filing her TPS and EAD extension applications, and only 58 days before her current EAD is set to expire, Plaintiff called Defendant USCIS to inquire about her case status. She received an email demonstrating receipt of her inquiry and was told that a USCIS officer would call her back within 30 days. (Mohammed Aff. ¶ 31, Exhibit A1; Exhibit S, USCIS and Senator Ed Markey Correspondence).

32) On January 18, 2022, Plaintiff filed a request to expedite the processing of her Form I-765 EAD renewal application through Senator Ed Markey's office. (*Id.*, ¶ 32, Mohammed Aff., Exhibit A1; Exhibit S USCIS and Senator Ed Markey Correspondence.)

33) On January 27, 2022, Plaintiff received a call from a Tier 2 USCIS officer in response to her inquiry on January 3. The officer told her that he would put in a service request for her case at the Vermont Service Center, which could take anywhere from 15 to 30 days. He also explained that the Vermont Service Center is currently processing applications that came in on July 31, 2020, a few days after she filed. (Mohammed Aff. ¶ 34).

34) On January 31, 2022, Plaintiff called Defendant USCIS and asked to speak to a Tier 2 officer regarding her case status. She was told to expect a call back within 72 hours. To date, Plaintiff has not received a call back. (*Id.*, ¶ 35).

35) On February 1, 2022, Plaintiff received a receipt from an inquiry placed into the USCIS Ombudsman office, requesting assistance with the delayed employment authorization renewal. (*Id.*, ¶ 36, Mohammed. Aff., Exhibit A1; Exhibit S, USCIS and Senator Ed Markey Correspondence). To date, Plaintiff has not received a response from this request.

36) Plaintiff timely filed her TPS extension applications within the required two-month period. Plaintiff filed her EAD extension more than seven months ahead of expiration. (Mohammed Aff. ¶ 30.)

37) Plaintiff's extension applications have been pending for more than 190 days, during which time she has received no meaningful updates about her case from Defendant USCIS.

38) As a direct result of Defendants' inaction, Plaintiff faces the prospect of losing valid authorization to work in less than 30 days, at which point she will lose her sole means of

financial support and may be forced to terminate her employment at iRobot. (*Id.*, ¶¶ 38, 42).

39) Plaintiff will suffer severe financial loss if her EAD renewal is not approved before March 2, 2022. Plaintiff will lose gross earnings of $7,700.00 per month due to the loss of salary and her living expenses will deplete her savings in a few months. (*Id.*, ¶¶ 39-41, Mohammed Aff., Exhibit A1; Exhibit U, Earnings Statement). During Plaintiff's last unpaid leave, she estimates having lost approximately $30,000.00 in compensation from being unable to work. (Mohammed Aff. ¶ 25.)

40) Without valid work authorization, Plaintiff will also suffer consequences to her employment-based permanent residency application. iRobot is sponsoring Plaintiff and has retained the law firm Fragomen to file on their behalf. Fragomen warns that "any changes in the terms of your employment may invalidate your application." If Plaintiff were to be employed even one day without work authorization, or if she were forced to terminate her employment, she risks becoming ineligible for an employment-based green card (Mohammed Aff. ¶ 43-46, Exhibit A1; Exhibit X, Affidavit of Attorney Annelise Araujo.)

41) Furthermore, Plaintiff has no family in the United States and, without her only source of income or any other means to financially support herself, faces the imminent harm of being forced to return to war-torn Yemen, a country in which she has not resided for more than eight years, since 2012. (Mohammed Aff. ¶ 48).

42) The armed conflict in Yemen has created a humanitarian crisis where civilians lack food, medical care, and are frequently faced with random acts of violence. The Department of Homeland Security has itself indicated that, "requiring Yemeni nationals in the United States to return to Yemen would pose a serious threat to their personal safety," due to

the ongoing armed conflict within the country. Indeed, this is the reason Yemen has been designated for TPS since September 3, 2015. (*Id.*, ¶¶ 7-8, Mohammed Aff.; Exhibit F, Press release re TPS designation for Yemen).

43) In a recently published report by the International Rescue Committee, as a result of its civil war, Yemen is the world's third most dangerous country due to the impact of protracted conflict and the collapse of public systems. (International Rescue Committee 2022 Emergency Watchlist, Exhibit D.)

44) Further compounding the risk that Plaintiff will suffer irreparable harm if she is forced to return to Yemen due to her inability to work, is the fact that she is a young woman who came of age in the United States. According to the Department of State's 2020 Country Report on Human Rights Practices: Yemen, "Women faced deeply entrenched discrimination in both law and practice in all aspects of their lives. Mechanisms to enforce equal protection were weak, and the government could not implement them effectively." (2020 Country Reports on Human Rights Practices: Yemen, by the U.S. Department of State, Exhibit C).

45) Plaintiff has relied upon, and fully complied with, the TPS EAD Rule to obtain an EAD, acquire employment, and to maintain her sole source of financial support in the United States. (Mohammed Aff. ¶ 47).

46) The delay in renewing Plaintiff's timely filed TPS and EAD renewals, if it persists beyond March 2, 2022, will cause significant financial and emotional hardship to Plaintiff, who faces the imminent harm of losing her job during the COVID-19 pandemic, depleting her savings, and losing her sponsorship for an employment-based green card. Plaintiff also

faces the prospect of being forced to return to Yemen despite serious threat to her personal safety.

47) Adjudicating Plaintiff's applications takes minimal time and resources and is not a burden to the Defendants.

48) Defendants' unreasonable delay to fulfil their legal obligations prejudices Plaintiff and Plaintiff's employer in the midst of a global pandemic.

49) Plaintiff has no means apart from her present TPS and EAD extension applications to continue working. She has no other adequate remedy available to her.

## CLAIMS FOR RELIEF

### Administrative Procedure Act

50) Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-51 above.

51) The Administrative Procedure Act, 5 U.S.C. § 555(b), mandates that an agency "shall proceed to conclude a matter presented to it…within a reasonable time." Section 706(1) provides the Court with authority to compel agency action when unreasonably delayed.

52) "Agency action," for purposes of the APA includes, an agency's "failure to act." 5 U.S.C. § 551(13).

53) Defendants have a non-discretionary duty to take the discrete actions of (a) resolving the pending security checks, and (b) adjudicating both Plaintiff's TPS extension application and her EAD extension application within a reasonable period of time.

54) Defendants have unreasonably delayed adjudication of Plaintiff's TPS and EAD applications, considering that Plaintiff's applications were filed solely as renewals (not an

initial application) and Defendants' regulations required Plaintiff to wait until a two month window, and not before, to file for extension of her status and work authorization.

55) Defendants have unreasonably delayed the issuance of Plaintiff's EAD, because Defendants failed to issue her EAD within the last 190 days, even though Plaintiff timely submitted her extension applications, and because Defendants' failure to act directly will cause Plaintiff to lose her only source of income, deplete her remaining financial resources, and place her in imminent harm of losing her employment during a global pandemic.

56) Defendants' failure to adjudicate Plaintiff's TPS and EAD extension applications constitutes an unreasonable failure to act on those non-discretionary duties to take such discrete actions.

57) There is no other adequate remedy available to Plaintiff and she is clearly entitled to the relief requested.

## Mandamus Act

58) The Mandamus Act, 28 U.S.C. § 1361, provides the Court with the authority to compel an officer or employee of any agency of the United States to perform a duty owed to Plaintiff.

59) Plaintiff has a clear right to the relief requested – the adjudication of her TPS extension and EAD renewal. 8 U.S.C. § 1254a(a), 8 C.F.R. § 244.10, and 8 C.F.R. § 244.12.

60) Defendant has a clear duty to perform the act in question – to adjudicate the TPS extension and EAD renewal in a reasonable time under the circumstances. 5 U.S.C. § 555(b).

61) The circumstances include the fact that Plaintiff was required to wait to file for renewal of her TPS status and her EAD until between July 9, 2021 and September 7, 2021. Due to the automatic EAD extension, Plaintiff timely filed for her EAD renewal more than seven months prior to its expiration.

62) In the past, Plaintiff successfully twice-renewed her TPS and EAD authorization without undue delays. In 2020, USCIS failed to adjudicate her application for more than 255 days, until Plaintiff filed a federal lawsuit. Plaintiff is again awaiting adjudication.

63) Without a valid EAD, Plaintiff will be unable to work and support herself while residing in the United States.

64) Under the circumstances it is unreasonable for Defendants to delay adjudication of her TPS and EAD applications.

65) No other adequate remedy is available. Plaintiff has already initiated and submitted multiple requests to the agency to adjudicate her application setting out facts for consideration under the circumstances and Defendant USCIS has denied those requests.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1) Assume jurisdiction over this action;

2) Compel Defendants to adjudicate Plaintiff's I-821 (TPS) and I-765 (EAD) applications;

3) Award such further relief as the Court deems necessary or proper.

Dated: February 4, 2022

Respectfully submitted,
SALMA A. MOHAMMED

By her attorney:
/s/ *Susan Church*
Susan Church
929 Massachusetts Ave, Ste. 1
Cambridge, MA 02139
(617) 354-3944
sbc@demissiechurch.com